JOHN T. WILLIAMSON v. JAMES W. BUCK and GEORGE W. WYNNE.

*Claim and Delivery—Sufficiency of Evidence.*

On the trial of an action of claim and delivery for a horse (a jury trial being waived) where the court found "that the death of the horse, which died while in defendant's possession, was occasioned by removal out of plaintiff's possession in the country to the possession of defendant in town, and being kept in town and by the uses to which it was put and the manner in which it was tended and managed while it was so detained by defendant ;" *It was held,* that the finding was too general and indefinite to warrant the conclusion that the death of the horse was occasioned by the negligence of the defendant in taking and detaining it.

CLAIM AND DELIVERY tried at June Special Term, 1878, of WAKE Superior Court, before *Seymour, J.*

The parties having waived a trial by jury, the court found the following facts as appear from the record :—

1. Defendant Buck took the horse described in the complaint, from the possession of plaintiff on the 12th of May, 1872, and sold it to defendant, Wynne, before this action was instituted, who detained the same until its death, notwithstanding the demand of plaintiff for possession.

2. When so taken and detained, it was not the property of either of the defendants, but was the property of plaintiff.

3. It was the property of Mary Williamson, the wife of plaintiff, who died in 1870, bequeathing said horse to plain-

WILLIAMSON *v.* BUCK.

tiff; and notwithstanding defendant, Buck, is her executor and has never expressly assented to said legacy, yet by leaving the horse in possession of plaintiff for more than two years without ever having claimed it as executor, or setting up any claim thereto as his own individual property, there has been such an implied assent to plaintiff's legacy as vested the property in him before this action was brought.

4. Defendant, Buck, took the horse and sold it as his own property, and not as executor.

5. Defendant, Wynne, detained it after demand of plaintiff for two weeks after action brought, when the horse died in possession of Wynne.

6. The horse having died while so detained and defendants being wrong-doers, they are *prima facie* liable to plaintiff for its value, as a loss occasioned by the taking and detention; and the burden is on them to prove the cause of the death and to show that it was in no degree attributable to their negligence, nor to the fact that they had taken and detained it.

7. Defendants have not shown this; on the contrary the court finds as a fact that the death of the horse was occasioned by its removal out of the possession of plaintiff in the country, into the possession of defendants in town, and being kept in town; and by the uses to which it was put and the manner in which it was tended and managed while it was so detained by defendant Wynne.

8. That the horse was of the value of $125 when taken and at its death, but of no value at time of trial, being dead.

9. The court assesses the plaintiff's damages by reason of the taking and detention of the horse at $125 and interest thereon from the 21st of May, 1872.

The statement of the case is substantially as follows:—

The plaintiff offered evidence tending to prove that the horse in controversy was reared in the country on a farm

in Wake county, and used thereon until it was three years old. It was sold to Mary Williamson, wife of plaintiff, in the winter of 1868, and used on her farm near Raleigh. After her death on the 4th of March, 1870, the plaintiff continued in possession of the horse on the farm with the knowledge of Buck until it was carried to Raleigh by him on the 12th of May, 1872. The will of Mary Williamson in which Buck was named as executor was admitted to probate on the 1st of April, 1870, and was offered in evidence by plaintiff to show his right to the property as legatee. There was also evidence that Buck never claimed the horse as executor, nor exercised any authority over it until he took it, in the plaintiff's absence and without his consent, on the 12th of May, 1872, claiming it as his own private property, and as such delivered it to defendant Wynne who kept it at his livery stable in Raleigh about a week, when Buck sold it to him at $125, being a fair market price. Defendant Wynne hired the horse to customers from time to time, and used it as one of the team to his omnibus until about two weeks after this action was commenced, when it died of colic at the stable, having been hired the day before to a customer who drove the horse twelve miles in the country and back. The plaintiff made a demand for the horse on the 21st of May, 1872, before suit brought, and Wynne refused to deliver. Wynne offered evidence to prove that it was well cared for while in his possession, and did not die in consequence of any negligence or abuse on his part or of those to whom the use of the horse had been entrusted, and that it was not injured by the said drive on the day before its death.

Defendant Wynne insisted:

1. That assuming all the plaintiff's evidence to be true, he had not shown such a property in the horse as would entitle him to recover. The court held otherwise.

2. Defendant Buck, as executor, had never *expressly* as-

sented to plaintiff's legacy, and there was not sufficient evidence from which the court could find *as a fact* that Buck had impliedly assented thereto. The court held there was sufficient evidence to find such fact.

3. Plaintiff would not be entitled to recover unless the death of the horse was caused by defendant Wynne, and in that event, of which there was no evidence, he could only recover the hire of the horse during the two weeks it lived after the sale to Wynne. The court held there was sufficient evidence that the death was occasioned by the negligence of Wynne in taking and detaining it, and found upon these points as set out in the sixth and seventh sections of the findings as above.

Judgment for plaintiff.   Appeal by defendants.

*Messrs. E. G. Haywood* and *Gilliam & Gatling,* for plaintiff.
*Mr. D. G. Fowle,* for defendants.

ASHE, J.   This was an action of claim and delivery for a horse, instituted by the plaintiff against the defendant, brought by appeal from the June term, 1878, of superior court of Wake county.   Both parties waived a jury trial and referred all the issues of law and fact, for decision, to the court.   The defendant insisted on the trial and we must consider it as a special instruction prayed for, " that plaintiff would not be entitled to recover in this action, unless the death of the horse was caused by the defendant, Wynne, and in that event, of which there was no evidence, only for the hire of the horse during the two weeks he lived after the sale to Wynne."

In answer to this instruction the court held that there was sufficient evidence from which the court might find as a fact that the death of the horse was occasioned by the acts or negligence of the defendant, Wynne, in taking and detaining it or while he was detaining it; and referred as to

his finding, upon these points to the 6th and 7th sections of his findings of fact set out in the record. The sections referred to are as follows:

6. " The horse having died while so detained as aforesaid and the defendants being wrong-doers, they are *prima facie* liable to the plaintiff for its value as a loss occasioned by the taking and detention, and the burden is on them to prove the cause of the death and to show that it was in no degree attributable to their negligence, nor to the fact that they had taken and were detaining it."

7. " That the defendants have not shown this, on the contrary, the court finds as a fact that the death of the horse was occasioned by its removal out of the possession of the plaintiff in the country, into the possession of the defendants in town, and being kept in town and by the uses to which it was put and the manner in which it was tended and managed while it was so detained by the defendant, Wynne." In the 8th and 9th sections, His Honor found as facts, that the horse was worth when taken $125, but being dead was worth nothing at the time of the trial. And he assessed the damages at $125 with interest, for the detention of the horse for two weeks, a finding that can only be warranted upon the ground that the horse came to his death by the ill treatment or negligence of the defendants.

There is no fact of ill treatment or abuse found. But the fact is found by His Honor that the death of the horse was occasioned by its removal from the possession of the plaintiff in the country, into the possession of the defendant in town, and by the uses to which it was put, and the manner in which it was treated and managed while detained by the defendant.

We cannot see from the finding how the health of the horse was affected by his removal to the town, nor how the use to which he was put operated to his injury, nor in what manner he was improperly " tended and managed." The

findings are too general and indefinite to warrant the conclusion His Honor has drawn from them. They are not sufficient to raise the legal inference of negligence.

Negligence is a mixed question of law and fact. The finding of the facts is a question for the jury, or the court in a case like this, and is conclusive. But whether when found they constitute a case of negligence is a question of law for the court, which is reviewable upon error assigned.

There was error in the instruction which His Honor gave to himself as the trier of the facts as to the measure of damages. Let this be certified to the superior court of Wake county, that a *venire de novo* may be awarded to the defendants.

Error.                              *Venire de novo.*